UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

|  |  |  |
|---|---|---|
| GREGORY WEATHERBEE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No. 4:09-cv-103-TWP-WGH |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration | ) ) ) ) | |
| Defendant. | ) ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Gregory K. Weatherbee ("Weatherbee"), requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), denying Weatherbee's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner.

I. **STATEMENT OF THE CASE**

   A. **Procedural History and Facts**

Gregory Weatherbee was involved in a motorcycle accident on June 15, 2006. Weatherbee crushed his right wrist and suffered a right sided mass of clotted blood (subdural hematoma) and bleeding in the area just outside of his brain (parietal subarachnoid hemorrhage). Weatherbee underwent surgical removal of a portion of his skull (craniectomy) in order to evacuate the hematoma and reconstructive surgery to repair his right wrist. Weatherbee reported residual

deficits in his right wrist, hand and shoulder, trouble keeping his balance, cognitive disorder, adjustment disorder and lower immediate and general memory function.

On June 26, 2006, Gregory K. Weatherbee filed an application for DIB under Title II of the Social Security Act, 42 U.S.C. ' 423(d), and for SSI under Title XVI of the Act, 42 U.S.C. ' 1382c(a)(3). Weatherbee alleged his disability began on June 16, 2006. Weatherbee=s claims were initially denied on February 9, 2007, and again upon reconsideration on May 7, 2007. Weatherbee filed a timely written request for a hearing on July 9, 2007, and the request was granted.

A video hearing was held on December 1, 2008 by Administrative Law Judge (AALJ@) Michael J. Nichols, where Weatherbee was present with his attorney. At the hearing, Weatherbee, Weatherbee=s mother and a Vocational Expert testified. Medical records were also provided and additional testing was requested. On March 31, 2009, the ALJ concluded that Weatherbee was not disabled under the Social Security Act. On May 28, 2009, the Appeals Council denied review of the ALJ=s decision, thereby making the denial of benefits a final decision of the Commissioner and subject to judicial review. 20 C.F.R. ' 416.1481. Pursuant to 42 U.S.C. ' 405(g), Weatherbee filed a civil action with this Court.

### B. ALJ Determinations

The ALJ's decision included the following findings:

(1) Weatherbee met the insured status requirements of the Act through June 30, 2011;

(2) Weatherbee had not engaged in substantial gainful activity since June 15, 2006, the alleged onset day;

(3) Weatherbee had severe impairments including status post head and wrist injury, cognitive disorder and mood disorder;

(4) Weatherbee does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

(5) after consideration of the entire record, the ALJ finds that Weatherbee has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except unlimited use of the non-dominant left arm and use of the dominant right arm for fine manipulation only but for gripping, turning or twisting, can perform simple tasks, can have no interaction with the public and cannot perform fast paced or quota driven work;

(6) Weatherbee was unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

(7) Weatherbee was born on October 3, 1960 and was 45 years old, which is defined as a younger individual, age 45-49, on the alleged onset date;

(8) Weatherbee has at least a high school education and was able to communicate in English;

(9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not claimant has transferable job skills;

(10) considering Weatherbee's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Weatherbee can perform.

With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Weatherbee had not been under a disability, as defined in the Act from June 15, 2006, through the date of the ALJ's decision.

## II. DISCUSSION

### A. Applicable Law

To be eligible for Disability Insurance Benefits and Supplemental Security Income, Weatherbee must establish that he suffers from a disability. ADisability@ is defined by the Act as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. ' 423(d) (1) (A).

The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. 20 C.F.R. ' 416.920. The ALJ must consider whether the claimant: (1) is presently engaged in substantial gainful activity; (2) has a medically severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.*

The burden of proof is on plaintiff during steps one through four; after plaintiff has reached step five, however, the burden shifts to the Commissioner to show that there are jobs available in the economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). At the last step of the sequential evaluation process, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. The claimant will be found to be disabled if unable to do other work for the required durational period.

Judicial review of the Commissioner's decision is authorized by 42 U.S.C. §§ 405(g) and 1383(c) (3). The ALJ's decision must demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F. 3d 966, 971 (7th Cir. 1991). Section 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Butera v. Apfel*, 173 F. 3d 1049, 1055 (7th Cir. 1999); *see also Maggard v. Apfel*, 167 F.3d 376 (7th Cir. 1999).

Substantial evidence is defined as Asuch relevant evidence as a reasonable mind might accept as adequate to support a conclusion.@ *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This deferential standard of review

recognizes that it is the Commissioner=s duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 400. Accordingly, this Court may not reevaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was Adisabled,@ the court must still affirm the ALJ=s decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### B. ANALYSIS

At the hearing, the ALJ asked the Vocational Expert ("VE") about jobs a hypothetical individual could successfully perform with the following limitations: (1) can do only simple tasks; (2) can do only sedentary work; (3) cannot do work that involved interaction with the public; (4) cannot do fast paced or quota driven work; and (5) can do work that required only the use the dominant hand for fine manipulation. Weatherbee claims that the answers given by the VE in response to the ALJ's hypothetical questions were inaccurate, thereby invalidating the findings at step five of the aforementioned analysis. The Court disagrees, finding that the ALJ appropriately instructed the VE, and the VE sufficiently answered the hypothetical questions posed.

Before questioning the VE, The ALJ initially instructed the VE that in answering hypothetical questions, she must refer to jobs and their descriptions as they are found in the Dictionary of Occupational Titles ("DOT").  The ALJ further requested that if the VE gave testimony that conflicted with the material found in the DOT, that she please "identify the conflict and resolve it by sighting the source" of her information. The VE affirmed that she both

understood the request and would identify any conflict between her testimony and the DOT and identify the source of her information.

Weatherbee contends that the ALJ had an affirmative duty to ask about any conflict between the VE, the evidence, and the DOT. To support his claim, Weatherbee relies on Social Security Ruling 00-4p. SSR 00-4p states that:

> Before relying on VE . . . evidence to support a disability determination or decision, our adjudicators must: identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and explain in the determination or decision how any conflict that has been identified was resolved. Social Security Ruling 00-4p (Dec. 4, 2000).

Although this argument is not entirely without merit, the Seventh Circuit has held that SSR 00-4p Arequires only that the ALJ investigate and resolve *apparent* conflicts between the VE=s evidence and the DOT.@ *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008); *see also Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (no error when any conflict between the DOT and VE testimony was not "obvious"). While an ALJ has an affirmative responsibility to ask a vocational expert about any possible conflict between evidence the vocational expert provides about a job's requirements and information in the DOT, *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 275 (7th Cir. 2010), not asking a vocational expert about a conflict is a harmless error if there is no actual conflict. *Terry v. Astrue,* 580 F.3d 471, 478 (7th Cir. 2009).

Weatherbee argues that there were *apparent* conflicts between the vocational expert testimony and the DOT. Specifically Weatherbee alleges that the VE incorrectly testified that there were inspector jobs, office clerk jobs and production worker jobs which were sedentary and

6

unskilled that Weatherbee could perform. Weatherbee, however, has not identified any conflicts between the VE=s testimony and the DOT that were in fact obvious or *apparent*.

The VE began her testimony by citing to general categories of suitable work. She further specified particular jobs within those categories which were unskilled and sedentary and would suit Weatherbee's restricted capabilities. These included weight tester and document preparer and fabric finisher. Weatherbee contends that the final job listed, fabrication finisher, cannot be maintained. Nevertheless, Weatherbee maintains general use of his non-dominant hand, and use for fine manipulation of his dominant hand, which suggest that he may succeed as a fabrication finisher. As support, Weatherbee simply states that Aproduction jobs inherently are quota driven@ and Ainspector jobs by definition and reason would certainly be fast paced and quota driven.@ Aside from his given opinions, Weatherbee has not presented any evidence or otherwise shown that any of the suggested jobs cited by the VE were indeed quota-driven or fast-paced. The assertion that an apparent conflict existed between the VE=s testimony and the DOT is not supported by the record or evidence tendered in this case.

This Court finds that the ALJ was not required to make any further inquiries because the VE's testimony did not present any apparent or obvious conflicts as that term is contemplated under SSR 00-4p and case law. The ALJ did not err in deciding not to further question the VE because plaintiff did not object to the VE's testimony with respect to plaintiff's ability to work and the inconsistency he now raises is not obvious. *Harris v Astrue*, 646 F. Supp 2d 979, 995(7th Cir. 2009). *Harris* goes on to state "While recognizing an affirmative duty to inquire into possible discrepancies between a VE's testimony and the DOT, the Seventh Circuit has not established a

singular method by which ALJ's must elicit potential conflicts". There is no error in the ALJ making the inquiry at the onset of questioning.

As previously stated, the Court will not overturn the ALJ's determination in a Social Security case if it is supported by substantial evidence. *Schmidt v. Astrue*, 496 F.3d 833, 841-42 (7th Cir.2007). It is this Court=s belief that the ALJ satisfied his duty to affirmatively inquire into any inconsistencies when he asked the VE to resolve any differences she may have with the DOT and that the ALJ's finding were supported by substantial evidence.

### III. CONCLUSION

There was no reversible error in the assessment of Weatherbee's application for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances Weatherbee is not entitled to relief in this action. The Commissioner's final decision is **AFFIRMED.**

IT IS SO ORDERED.

Date: 09/29/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution to:

William Edward Jenner
JENNER AUXIER & PATTISON LLP
wjenner@wjennerlaw.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov